## Case No. 15,104.

### UNITED STATES v. FISK et al.

[2 Int. Rev. Rec. 10; 13 Pittsb. Leg. J. 110.]

Circuit Court, S. D. New York. 1865.[1]

INTERNAL REVENUE—BANKERS AND BROKERS—TAX ON SALES.

[The provision in Act March 3, 1865, extending the definition of "brokers" given in Act June 30, 1864, § 79, subd. 9, which requires a license fee to be paid by brokers, so as to make it apply to persons negotiating sales of stocks or securities, whether "for themselves or others," does not apply to section 99 of the act of 1864, imposing certain duties upon sales by brokers.]

BY THE COURT. This is an action to recover an amount of duties upon the sales of government stocks by the defendants [Harvey Fisk and Alfred S. Hatch], under the act of congress of June 30, 1864 [13 Stat. 223], amended by the act of 3d March, 1865 [13 Stat. 469]. The defendants are bankers in the city of New York, licensed under section 79 of the former act. In the course of their business they buy and sell government securities on their own account, and for themselves, and not for others, or on commission. It is admitted that in the month of April last they sold, as such bankers, government stocks held and owned by them in their own right, the duties upon which, if they are subject to the payment, amounted to the sum of $1,000, under the seventy-ninth section of the act of 1864. The question involved in the case is, whether or not the defendants are liable to this tax?

The first subdivision of section 79 of the act of 1864 required bankers, employing a capital not exceeding $50,000, to pay a license fee of $100, and, for every additional $1,000, $2. It also defines the term "bankers" within the meaning of the act, as follows: "Every person, firm, &c., having a place of business — (1) where credits are opened by a deposit or collection of money, &c., subject to be paid or remitted upon draft, &c.; (2) where money is advanced, or loaned on stocks, &c.; or (3) where stocks, &c., are received for discount or sale." By subdivision 9, brokers are required to pay a license fee of $50. A broker is defined as follows: "Every person, firm, &c., except such as hold a license as a banker, whose business it is as a broker to negotiate purchases or sales of stocks, exchange, &c., or other securities." By subdivision 13, produce brokers pay a license fee of $10, and by subdivision 14. commercial brokers pay a fee of $20. Wholesale dealers in merchandise, &c., pay a license fee of $50 (subd. 2), and retail dealers a fee of $10 (subd. 3). The

[1] [Affirmed in 3 Wall. (70 U. S.) 445.]

ninety-ninth section of the act of 1864 enacts that brokers, and bankers doing business as brokers, shall pay the following rates of duty: "Upon all sales of merchandise, produce, or other goods, one-eighth of one per centum; upon all sales and contracts for sales of stocks and lands, one-twentieth of one per centum on the par value thereof," &c., provided that any person, firm, &c., not being licensed as a broker, or banker, or wholesale or retail dealer, who shall sell, &c., any merchandise, produce, &c., "stocks, bonds, or other securities, not bona fide at the time their own property, and actually on hand, shall be liable to pay, &c., fifty per centum in addition to the foregoing duties." The law thus stood under the act of June 30, 1864, and, it is admitted, on behalf of the government, that, under the provisions of this act, neither the broker, or banker doing business as a broker, was subject to the duty of one-twentieth of one per centum, when doing business on their own account, or for themselves; but only upon sales made for others, or on commission; in other words, when acting in the character and capacity of brokers. This section 99, in terms, limits the tax to sales made by brokers, and bankers doing business as brokers. The word is familiar, and well understood, as used in statutes or in its legal acceptation. A broker is an agent employed to make bargains and contracts between other persons in matters of trade or business, usually for compensation, called brokerage. The difficulty in this case arose out of the amendments made by the act of 3d March, 1865. The first amendment bearing on the question is of the ninth subdivision of section 79, by adding to the words "other securities," "for themselves or others." This enlarges the definition of a broker, and makes the term embrace a person or firm negotiating purchases or sales of stocks &c., for themselves as well as for others. Since this amendment, it is insisted that the enlarged meaning shall be applied to the term as used in section 99; and hence the broker is liable, upon sales of stocks made in his own right and for himself, to the duty of one-tenth of one per centum.

There are several difficulties in the way of this construction. In the first place, this section was amended at the same time and by the same act, without at all effecting or even alluding to any change or intended change, in the meaning of the word "brokers" as originally used in it. In the second place, the words "brokers, and bankers doing business as brokers," in section 99, embrace produce and commercial brokers, who are subject to a tax of one-eighth of one per centum upon their sales. Now, it cannot be pretended that as to this class of brokers, they are subject to this enlarged meaning, that is, that they are liable for the duty or tax on sales made in their own right and for themselves. A special license

is provided in case of such sales, as is seen in subdivisions 13 and 14 of the seventy-ninth section of the act of 1864, and which have not been altered or amended. The words, therefore, in section 99, as it respects this class, must be taken in their ordinary and legal acceptation, and not otherwise; and, in order to give the argument any force in favor of the transfer of the enlarged meaning of the terms to this section, we shall be obliged to hold that the same word possesses different and opposite meanings when used in the same section and in the same connection. And finally, in the third place, the proviso to section 99 forbids the construction claimed. That prohibits persons or firms from selling, among other articles, stocks or bonds, without a license as a broker or banker, unless, at the time, their own property bona fide, and actually on hand; clearly indicating, we think, that the sales contemplated in the enacting clause are limited to those made as brokers for others, and not in their own right and for themselves.

As we have seen, the amendment wrests from the word "broker" its true meaning, as known in law or commerce; and if this new meaning is to be extended beyond the immediate connection in which the word is found, especially in a statute regulating and establishing a system of taxation and revenue, it will lead to consequences never intended by the lawmakers, and involve contradictions and absurdities that it would be unjust to impute to them. The word, whenever used in the act of 1864, was used in its ordinary acceptation, and the object of the change of meaning in the ninth subdivision of section 79 by the amendment, is not apparent. It may have had reference to the license fee, or, in addition to this, it may have been made with a view to guard against an evasion by persons doing business as brokers. It is understood that in the negotiation of sales of stocks, in the several boards of brokers, the contract of sales is made in the name of the broker, and apparently on his own account, and for his own benefit, although, as between him and his customer, it is made for the benefit of the latter. The amendment prevents any advantage to be gained by setting up the apparent contract as the real one intended. The proviso to the ninety-ninth section would seem to have had in view the possibility of this practice on the part of the broker, and hence limits the sales exempt from tax by persons on their own account, and for their own benefit, to sales of their own property bona fide at the time, and which was then on hand.

We are quite aware of the difficulties and perplexities attending the construction of acts of the legislature as obscure and contradictory as the present one; but, after the best consideration, and for the reasons above stated, we have come to the conclu-

sion that neither brokers, nor bankers doing business as a broker, are liable, under the ninety-ninth section of the act of 1864, to the duty claimed upon sales made in their own right, and for themselves, and not for others or on commission.

According to stipulation of the attorneys and counsel, judgment must be rendered for the defendants.

[The case was taken on a writ of error to the supreme court, where the judgment of this court was affirmed. 3 Wall. (70 U. S.) 445.]

NOTE. U. S. v. Robert L. Cutting et al. July 5, 1865. Nelson, Circuit Justice. For the reasons given in the case of U. S. v. Fisk and Hatch judgment must be entered for the defendants.